# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**AFRIKA TOMLINSON,**

                **Plaintiff,**

**v.**                                  **Case No.  8:05-cv-1880-T-30MSS**

**GIL MACHIN, in his official capacity as**
**Director of Section 8 Housing of**
**Hillsborough County, Florida; and**
**PATRICIA G. BEAN, in her official capacity**
**as Administrator of Hillsborough County,**
**Florida,**

                **Defendants.**

_____/

## ORDER

       THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. #25), Affidavit of Gil Machin (Dkt. #29), Affidavit of Patricia Bean (Dkt. #30), Affidavit of Patricia Matz (Dkt. #31), Defendants' Request to Take Judicial Notice in Support of Defendants' Motion for Summary Judgment (Dkt. #33), Deposition of Afrika Tomlinson (Dkt. #34), Affidavit of Sylvia Cuillo (Dkt. #35), Plaintiff's Memorandum in Opposition of Defendants' Motion for Summary Judgment (Dkt. #38), Plaintiff's Unopposed Request for Oral Argument upon Defendants' Motion for Summary Judgment (Dkt. #39), Affidavit of Afrika Tomlinson (Dkt. #40), Affidavit of Don Shea (Dkt. #41), Deposition of Patricia Bean (Dkt. #42), Deposition of Gilbert Machin (Dkt. #43), Deposition of Sylvia Cuillo (Dkt. #44), and Deposition of Patricia Matz (Dkt. #45).  The Court, having considered

the motion, response, memoranda, affidavits, depositions, exhibits, and being otherwise advised in the premises finds that: Defendants' Motion for Summary Judgment should be granted; Defendants' Request to Take Judicial Notice in Support of Defendants' Motion for Summary Judgment should be granted; and Plaintiff's Unopposed Request for Oral Argument upon Defendants' Motion for Summary Judgment should be denied.

## Background

In 2003, Plaintiff Afrika Tomlinson ("Plaintiff" or "Tomlinson") qualified as a participant in the Section 8 Program, Health and Social Services Department of Hillsborough County, Florida ("Section 8"). As a Section 8 participant, Tomlinson entered into a one year lease beginning on October 1, 2004, and ending on September 30, 2005, with TWC 83, Ltd. d/b/a Windermere Apartments ("Windermere") for an apartment located at 9413 Windermere Park Circle, Apt. #102, Riverview, Florida (the "Windermere Unit"). Section 8 entered into a Housing Assistance Program Contract with Windermere, in which Section 8 agreed to pay rental assistance benefits each month directly to Windermere on behalf of Tomlinson. Tomlinson's tenancy was governed by the terms of her lease, the Hillsborough County Administrative Plan 2004-2005 for the Section 8 Housing Choice Voucher Program, and 24 C.F.R. §982 *et seq.* (the "Administrative Plan").

As part of Plaintiff's Section 8 participant's qualification process, Plaintiff attended a Section 8 orientation where she received and signed a document entitled "Hillsborough County Section 8" indicating that she had attended the orientation and was informed of HUD and Public Housing Agency (PHA) policies, procedures and regulations. Plaintiff

acknowledges receiving, reading, understanding, and signing documents entitled "Your Responsibilities" and "Family Obligations" at each of her annual renewals of Section 8 benefits.

In order to be eligible for admission or recertification in the Section 8 Program, the applicant(s) must meet both HUD and the PHA's criteria for admission to the program.  The HUD eligibility criteria  require that an applicant and or participant must be within the appropriate income limits and must supply any information requested by the PHA or HUD for use in an examination of family income and household composition.  In accordance with HUD requirements, the PHA examines the income and household composition of all families annually.  It is a HUD requirement that families report all changes in household composition and income.[1]  Total family income is a crucial factor in eligibility for assistance and the level of such assistance.  If the family income or household composition do not meet HUD's eligibility requirements then the family may be denied admission and/or recertification in the Section 8 Program.

Program participants must report in writing all changes in household composition to the PHA between annual reexaminations, this includes the addition of a spouse.  The family must obtain PHA approval prior to all additions to the household.  If any new family member is added, family income must include any income of the new family member.  The PHA will conduct a reexamination to determine such additional income and will make the appropriate

---

[1] See 24 C.F.R. §982.516 and Chapter 12 of the Administrative Plan.

adjustments in the housing assistance payment and family unit size.  Increases in income or assets must be reported in writing to the PHA within 10 days of the increase.[2]  If the family fails to disclose all additions to the family and/or income, then the PHA may deny admission and/or recertification in the Section 8 Program.

Additionally, the PHA may deny or terminate Section 8 assistance if the PHA determines that any listed member is currently engaging in illegal use of a drug, or any member of the family commits drug-related criminal activity, or violent criminal activity, including domestic violence.  All federally assisted housing is intended to provide a place to live and raise families, not a place to commit crime, to use or sell drugs or terrorize neighbors.  It is the intention of Hillsborough County to fully endorse and implement a policy designed to: help create and maintain a safe and drug-free community; keep our program participants free from threats to their personal and family safety; help maintain an environment where children can live safely, learn and grow up to be productive citizens; and assist families in their vocational/educational goals in the pursuit of self-sufficiency.[3] Accordingly, it is important to disclose all new family members to the PHA so that the PHA may determine if such proposed member has a criminal background.  If the member does

---

[2] See Chapter 12, Section C of the Administrative Plan and 24 C.F.R. §982.516.

[3] See Chapter 15, Section B of the Administrative Plan.

have a criminal background related to drugs or violent criminal activity, then the PHA will deny admission and/or recertification in the Section 8 Program.[4]

On or about July 25, 2004, Tomlinson submitted her 2004-2005 renewal package for Section 8 benefits for the Windermere Unit. In the renewal package Tomlinson included a copy of a Florida driver's license and a Social Security card for a Keontae M. Golden. The driver's license was issued on May 14, 2004, and the address reflected on the license was "9413 Windermere Park Circle, Riverview, Florida 33569" (the Windermere Unit). However, the renewal form indicated under "Household Composition" that Tomlinson and four minor children were the members of the household who would be living in the Windermere Unit. The Household Composition did not reflect Mr. Golden.

Subsequently, Patricia Matz, a Section 8 Housing Counselor ("Matz") telephoned Tomlinson to inquire as to why Mr. Golden's Florida driver's license and Social Security card were included in the renewal package, but Mr. Golden was not listed as a member of the household. Tomlinson said that she had married Mr. Golden on July 31, 2004, but that she "threw him out."

On July 7, 2005, Windermere telephoned Section 8 to provide information about an unauthorized guest in the Windermere Unit and Windermere's intent to evict Tomlinson for violation of her lease. On July 17, 2005, Windermere issued and delivered its "Thirty Day

---

[4] See Chapter 15, Section A of the Administrative Plan; 24 C.F.R. §982.552(c) and §982.553. Denial and/or termination of assistance is mandatory if any family member is currently engaging in illegal use of a drug or commits drug-related activity, or violent crime activity, including domestic violence.

Notice Without Opportunity to Cure Notice of Termination" to Tomlinson.  On August 18, 2005, Matz received an email from Latoria Boyd, Assistant Community Manager with Windermere ("Boyd"), advising that Windermere was proceeding with the eviction of Tomlinson and that Windermere would not accept further rental payments from Section 8 on behalf of Tomlinson.  Additionally, on August 22, 2005, Matz received a letter dated August 18, 2005, from Boyd stating that two detectives from the Hillsborough County Sheriff "stopped by to verify that Mr. Golden was in fact a resident of Windermere Apartments." According to Boyd's letter, the detective confirmed to Windermere that Mr. Golden was in the unit.

On August 23, 2005, Matz compiled an "End of Participation" package ("EOP") on Tomlinson and forwarded the EOP to Sylvia Cuillo, Section 8 Senior Housing Counselor and direct supervisor of Matz ("Cuillo"), for Cuillo's compliance review.  On the same day, Cuillo reviewed the EOP and found there was sufficient documentation and information in the file to support a violation of established rules and regulations and Cuillo signed off on the EOP.

Also, on August 23, 2005, Cuillo prepared a "Notice of Intent to Terminate Section 8 Benefits" letter ("Notice") which was hand-delivered that day to Tomlinson.  Cuillo marked the Notice with an "X" indicating four reasons for termination, and hand-wrote annotations on the face of the document.[5]  The Notice indicated that the date of termination

---

[5] Dkt. #9-2.

was "9/30/05".  The Notice also indicated that Tomlinson's benefits were being terminated based on the following reasons: (1) Unauthorized resident in unit in violation of HUD 24 982.551, 516; (2) Unreported income in violation of HUD 24 982.551, 516 (relating to unauthorized guest); (3) Violent Criminal Activity in violation of HUD 24 982.551, 553 (relating to arrest record of unauthorized guest); (4) Other - Landlord processing for eviction due to alleged serious and repeated lease violations.

The Notice also stated:

> If you disagree with this decision, you have the right to an Informal Hearing before the decision to terminate your Section 8 Assistance becomes final.  The presence of a documented disability may be considered as a mitigating circumstance during the Informal Hearing Process.  <u>YOU MUST REQUEST THE INFORMAL HEARING IN WRITING BEFORE 5:00 PM on 9/7/05.</u>  If you fail to request an Informal Hearing in accordance with this notification the Housing Agency's decision to terminate your Section 8 Assistance will be final.

Tomlinson was in the Section 8 office on August 23, 2005, when the Notice was hand-delivered to her, and she hand-wrote her request for an informal hearing and submitted it that same day.  Subsequently, on August 23, 2005, Cuillo prepared and hand-delivered to Tomlinson a Notice of Informal Hearing Date letter scheduling the Informal Hearing for September 15, 2005.  Concurrently, a Notice of Informal Hearing for Intent to Terminate Section 8 Benefits was prepared and sent to Windermere.  On August 25, 2005, Windermere issued and delivered to Tomlinson its 7-day Notice to Cure Noncompliance or Vacate Premises.

On August 30, 2005, Cuillo prepared and sent to Tomlinson a Rescheduled Notice of Informal Hearing Date which rescheduled the Informal Hearing from September 15, 2005 to September 12, 2005.  A Rescheduled Notice of Informal Hearing for Intent to Terminate Section 8 Benefits was also sent to Windermere on August 30, 2005.

On September 9, 2005, Cuillo met with Martin Lawyer, Esquire, attorney for Tomlinson, and assisted Mr. Lawyer and Tomlinson in an on-site file review of Section 8's files, including the documents upon which Section 8 would rely at the September 12, 2005 Informal Hearing.

On September 12, 2005, Tomlinson's Informal Hearing was conducted before Jamila Davis, the Hearing Officer who was appointed by the Tampa Housing Authority/City of Tampa.  Both parties were given the opportunity to present their own evidence and to question witnesses.  Tomlinson (Plaintiff), Mr. Lawyer (Plaintiff's attorney), Ms. Matz (Section 8 Housing Counselor), Aly Pinto (Assistant Manager of Windermere), Janice Harris (Community Manager at Windermere), Joy Smith-McCormick (Assistant City Attorney), and Adrian White (Tomlinson's neighbor) were in attendance at the Informal Hearing.[6]

The Informal Due Process Record indicates that the Hearing Officer presiding over the proceedings decided to uphold Section 8's decision to terminate Tomlinson's benefits. The Hearing Officer provided the following reasons for her decision:

---

[6] See Dkt. #9-3 entitled Informal Due Process Record.

The information presented indicates that Ms. Tomlinson had an unauthorized occupant in her unit from at least April 2004 through August 2005. The information supporting this conclusion is as follows:

(1)     Mr. Golden's street address (upon arrest on 4/19/04) was reported to HCSO as the assisted unit.

(2)     Mr. Golden obtained a driver's license on 5/14/04 which lists his street address as the assisted living unit.

(3)     A subpoena was returned served to Mr. Golden on 9/1/04 (the Clerk of Courts has recorded the assisted unit as Mr. Golden's address).

(4)     Per the landlord's written and verbal statement HCSO made contact with the assisted unit on 8/9/05 in an effort to locate Mr. Golden - he was found at the assisted unit on this date.

(5)     Also, on 9/20/04, Mr. Golden was sentenced to complete a Diversion Program - at this time Mr. Golden indicated that his address was the assisted unit. The client indicates that Mr. Golden was not residing with her at this time.

(6)     The client's witness, Mr. White, stated that he has only frequented the client's home as of July 2005.

Based on the preponderance of the evidence presented above, this hearing officer concludes that the client had/has an unauthorized person residing in her unit - as she contends that Mr. Golden did not reside with her during each of the incidents listed above. I must uphold decision to terminate.[7]

### Summary Judgment Standard

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995). At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth

---

[7] Dkt. #9-3.

of the matter, but to determine whether there is a genuine issue for trial." Anderson v.
Liberty Lobby, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, the court views all evidence in the
light most favorable to the party opposing the motion.  Harris v. H & W Contracting Co., 102
F.3d 516, 519 (11th Cir. 1996).  The moving party bears the initial burden of demonstrating
the absence of a genuine issue of material fact.  If the movant meets this burden, the burden
then shifts to the nonmoving party to establish that a genuine dispute of material fact exists.
See Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993).

## Analysis

In Plaintiff's Amended Complaint, Plaintiff claims that she was deprived of her
procedural due process rights under 24 C.F.R. §982.555(e)(5, 6) and 42 U.S.C. §1983 with
respect to Plaintiff's due process rights under the Fourteenth Amendment of the United States
by virtue of Defendants' failure to allow Plaintiff: (1) the opportunity to confront and cross-
examine persons who supplied information upon which the housing authority's action is
grounded; and (2) the right to have the burden of proof be upon the PHA to prove that
Plaintiff had substantially failed to comply with one of the legally permissible grounds for
terminating her Section 8 Voucher.

Defendants argue that: Tomlinson was provided the opportunity to confront and cross-
examine all witnesses in attendance at the informal hearing and to present her own evidence
and arguments at the Informal Hearing; §982.555(e)(5) provides that evidence may be
considered without regard to admissibility under the rules of evidence applicable to judicial

proceedings; and the "Visitors" section of the Administrative Plan for the Section 8 Housing Choice Voucher Program 2004-2005 (pages 50-51) provides that the burden of proof that the individual is a visitor rests on the family and in the absence of such proof, the individual will be considered an unauthorized member of the household and the PHA will terminate assistance since prior approval was not requested for the addition.

I.      **Defendants' compliance with HUD regulations and Due Process requirements.**

Section 982.555(e)(5, 6) provides:

(e) *Hearing Procedures -*

\* \* \*

(5) *Evidence.*  The PHA and the family must be given the opportunity to present evidence, and may question any witnesses.  Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.

(6) *Issuance of decision.*  The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.  Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing.  A copy of the hearing decision shall be furnished promptly to the family.

The Supreme Court has established the requirements for due process in the termination of public assistance as follows: (1) timely and adequate notice giving reasons for termination; (2) opportunity to appear at the hearing and to present evidence and question witnesses; (3) the right to representation by counsel; (4) the right to an impartial decision maker; (5) the right to have the decision based on rules of law and the evidence presented at the hearing; and (6) the right to a written decision by the decision maker outlining the reasons for the decision.  See Goldberg v. Kelly, 397 U.S. 254, 267-71 (1970).  This standard has

been applied to Section 8 certification programs.  Basham v. Freda, 805 F.Supp. 930, 933 (M.D. Fla. 1992).

It is undisputed that: Plaintiff was given the opportunity for a informal hearing to consider whether Plaintiff's housing assistance payments should be terminated in compliance with §982.555(a); Plaintiff was given the opportunity to request an informal hearing; Plaintiff requested an informal hearing; notice of the hearing date was provided to Plaintiff and Windermere; Plaintiff was given the opportunity to examine before the hearing any PHA documents that PHA planned to use at the hearing; Plaintiff was allowed to copy any such documents; Plaintiff was represented by a lawyer at the informal hearing; Plaintiff was given the opportunity to present evidence and question any witnesses in attendance at the hearing; and the person conducting the hearing provided a written decision, stating briefly the reasons for the decision.

In her complaint, Plaintiff attempts to add to the requirements of §982.555(e)(5) and the Administrative Plan by demanding the right to cross-examine "any witnesses" even those who were not present at the informal hearing.  Specifically, certain witnesses at the informal hearing provided information that included hearsay statements that were made to them from other parties.[8]  Plaintiff claims that her procedural due process rights have been violated because she was unable to cross-examine the "other parties."  Plaintiff argues that PHA

---

[8] For example, Plaintiff's landlord (present at the informal hearing) provided testimony that in August of 2005, detectives came to the leasing office and told her that Mr. Golden was living in the Windermere Unit and that Mr. Golden had missed a court appearance.  However, since the detectives were not present at the informal hearing, Plaintiff argues that she was not given the opportunity to cross-examine "witnesses."

should not have based its decision on hearsay statements of other parties who were not present at the informal hearing.  Plaintiff also argues that most of the evidence presented by PHA consisted of documents (a copy of Mr. Golden's driver's license, a copy of Mr. Golden's arrest record, a copy of a served subpoena upon Mr. Golden at the Windermere Unit, and a copy of Mr. Golden's Diversion Program report) that were prepared by third parties who were not present at the hearing.  Plaintiff complains that she was not given the opportunity to cross-examine the third parties that prepared such documents, such as the person at the Florida Department of Motor Vehicles who prepared Mr. Golden's driver's license or the person at the Hillsborough County Sheriff's Office who prepared Mr. Golden's arrest record.

Plaintiff's argument is unpersuasive in that §982.555(a)(5) specifically states, in pertinent part, that: "Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings."  Plaintiff seeks to hold Defendants to a much more rigid evidentiary standard than that imposed by HUD or PHA regulations.  In a PHA informal hearing, the Hearing Officer is not meant to apply the rules of evidence applicable to judicial proceedings; thus, it is clear by the plain meaning of §982.555(a)(5) that hearsay statements and copies of documents may be considered by the Hearing Officer in an informal PHA hearing without regard to the rules of evidence.

Additionally, §982.555 does not contemplate providing participants the power to subpoena witnesses to attend a PHA informal hearing.   Thus, Plaintiff's claim that she was

denied procedural due process because she was not provided the right to subpoena witnesses is also without merit.

It is clear to this Court that PHA complied with all HUD regulations and PHA guidelines regarding the termination of Plaintiff's Section 8 benefits as well as the Supreme Court's procedural due process requirements regarding an informal hearing.  Plaintiff disregarded federal and local regulations and failed to report an additional member of the household (Mr. Golden), despite signing numerous documents acknowledging this duty.

## II.    Plaintiff's burden of proof under Section 8 rules.

Plaintiff also argues that she is entitled to have the burden of proof be upon the PHA to prove that Plaintiff had substantially failed to comply with one of the legally permissible grounds for terminating her Section 8 Voucher.  Plaintiff has not provided this Court with any binding legal precedent which would support her claim that the burden of proof that Plaintiff violated Section 8 rules by allowing an unauthorized member to reside in the Windermere Unit should rest on the PHA.[9]  Other than Plaintiff's oral testimony that Mr. Golden was not living at the Windermere Unit and oral testimony from a neighbor who had only lived next door for a brief period of time (and not during the relevant period of April 2004 through June 2005), Plaintiff offered no evidence of any other address for Mr. Golden and no explanation as to why Mr. Golden was using the Windermere Unit address on his

---

[9] The Court is unpersuaded by the affidavit of Don Shea (Dkt. #41), a previous director of the Hillsborough County Section 8 Program, stating that it was his practice to "accept the appropriate statements of the federally-assisted tenants as to who are the members of the household" over written documents or reports contradicting a participant's statement.

current driver's license or why he provided the Windermere Unit address to law enforcement

officers as well as officers of the Court.

> The "Visitors" section of the applicable Administrative Plan states, in pertinent part:
>
> Any person not included on the HUD 50058 who has been in the unit more than 15 consecutive days without PHA approval, or a total of 30 days in a 12 month period, will be considered to be living in the unit as an unauthorized household member.
>
> Absence of evidence of any other address will be considered will be considered verification that the visitor is a member of the household.
>
> Statements from neighbors and/or landlord will be considered in making the determination.
>
> Use of the unit address as the visitor's current residence for any purpose that is not explicitly temporary shall be construed as permanent residence.
>
> The burden of proof that the individual is a visitor rests on the family.  In the absence of such proof, the individual will be considered an unauthorized member of the household and the PHA will terminate assistance since prior approval was not requested for the addition.
>
> * * *

Thus, the "Visitors" section of the Administrative Plan provides that "the burden of proof

that the individual is a visitor rests on the family" and "in the absence of such proof, the

individual will be considered an unauthorized member of the household and the PHA will

terminate assistance since prior approval was not requested for the addition."[10]   The

"Visitors" section of the Administrative Plan also provides that: the absence of evidence of

any other address will be considered verification that the visitor is a member of the

---

[10] See page 51 of the Administrative Plan.

household; statements from neighbors and/or landlord will be considered in making the determination; and use of the unit address as the visitor's current residence for any purpose that is not explicitly temporary shall be construed as permanent residence.[11]

Clearly, the Administrative Plan places the burden of proof on Plaintiff to show that Mr. Golden is a "visitor" rather than an unauthorized household member.  Although the burden was on Plaintiff to show that Mr. Golden was not an unauthorized member of the household, the PHA presented substantial evidence to the Hearing Officer in support of its assertion that Mr. Golden was indeed an unauthorized member of the household at the Windermere Unit.  The Hearing Officer's findings were based on the following information presented by PHA at the informal hearing: Mr. Golden's street address upon arrest in 4/19/04 was reported to HCSO as the Windermere Unit; Mr. Golden obtained a driver's license on 5/14/04 which lists his address as the Windermere Unit; a subpoena was served upon Mr. Golden on 9/1/04 at the Windermere Unit; Mr. Golden's sentencing report dated 9/20/04 listed his address as the Windermere Unit; and HCSO made contact with Mr. Golden at the Windermere Unit on 8/9/05.

## Conclusion

Upon review of the pleadings and the applicable HUD regulations, the Court concludes as a matter of law that: Defendants' Section 8 Administrative Plan 2004-2005 complies with the HUD and Supreme Court requirements; Defendants' handling of the case

---

[11] See page 50 of the Administrative Plan.

complies with both the Administrative Plan 2004-2005 and the HUD requirements; and finally, the Defendants' informal hearing procedures comply with the Supreme Court's requirements for procedural due process of law.  Additionally, based on the rules set forth in the Administrative Plan 2004-2005, the Court concludes as a matter of law that Plaintiff is not entitled to have the burden of proof of showing that Mr. Golden was an unauthorized household member rather than a visitor placed solely upon the PHA.

For these reasons, the Court finds that even in a light most favorable to Plaintiff no genuine issues of material fact exist for trial.  Accordingly, Defendants are entitled to summary judgment in their favor.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion for Summary Judgment (Dkt. #25) IS GRANTED.

2. Defendants' Request to Take Judicial Notice in Support of Defendants' Motion for Summary Judgment (Dkt. #33) is GRANTED.  The Court takes judicial notice of the following regulations and rules: Housing Urban Development, 24 C.F.R. §982 *et seq.* and Hillsborough County Administrative Plan for the Section 8 Housing Choice Voucher Program, 2004-2005.

3. Plaintiff's Unopposed Request for Oral Argument upon Defendants' Motion for Summary Judgment (Dkt. #39) is DENIED.

4. The Clerk is directed to enter JUDGMENT in favor of Defendants, Gil Machin, in his official capacity as Director of Section 8 Housing of Hillsborough County, Florida, and Patricia G. Bean, in her official capacity as

Administrator of Hillsborough County, Florida, and against Plaintiff, Afrika Tomlinson.

5.     The Clerk is also directed to CLOSE this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on January 16, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Even\2005\05-cv-1880.msj 25.wpd